Good morning, Your Honors. This is Justin Karzag on behalf of Appellant Ms. Haley Hickcox-Huffman. I'm mindful of the Court's instructions and their invitation to argue today, and so I would like to begin my argument by pointing out something that I'm not sure was well elucidated in the briefing, and that has to do with the Ginsburg Court's decision and their discussion of Woolens. When it came to Woolens' findings that under FAA preemption, there is a clear distinction between a prospective law targeting primary conduct and actions that simply give rise to bargains offered by the airlines and accepted by the airlines' customers. Specifically, when we look at the Supreme Court jurisprudence and we look at the ADA preemption, we see that there's often a different result depending upon whether the law being challenged is a law that targets the airlines in some way versus just application of a State's law. Let me make sure I've got this. As I read at Woolens and Ginsburg and that line of authorities, we've had some other cases that touch on it, too. Basically, if the State of California passed a law saying airlines have to pay passengers a penalty of $50 or a statutory minimum of $10 plus whatever damages the passengers can prove, whatever, if California passed a law saying that airlines have to do that when they're late with the baggage, that would be preempted. But if California does not pass a law and an airline makes a contractual commitment with passengers, those other airlines, they don't promise you anything, but we promise you your bags will get to you on time, and if they don't, we'll pay you $50. That would not be preempted because that's just the market working. It's not the State of California trying to regulate the fares and services of airlines. Have I got that right? Yes, Your Honor. As the Woolens Court concluded, terms and conditions that airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation or standard. So you beat the preemption by showing that the State of California hasn't told airlines one way or the other whether they have to get the baggage to the passenger on time or pay a penalty. It's up to the airlines whether to commit. Now, how do you make your breach of contract case? Well, Your Honor, we have a breach of express contract and a breach of implied contract by conduct. Can I just ask a slight question, which is getting to the same place? But I was a little confused by the district court's opinion and maybe the briefs, which seem to make the contract argument both as part of whether there was preemption and also on the merits. Now, which one are we doing here? I mean, are you assuming, are we going on to say there's no preemption? In other words, is it relevant to the preemption question to look at this particular contract, or do we just say with regard to the preemption question, you're alleging contractual and voluntary undertakings? Now we're going to get to the merits. Is that how you see the case? We see them on the latter, Your Honor. We believe that under the merits. So when you're answering Judge Kleinfeld's question, you're now answering a merits question, i.e., was there a breach of contract? Yes, Your Honor. Okay. But it isn't exactly what the district court decided, but it's not that – it would be on summary judgment anyway. Well, Your Honor, the – Is this a summary judgment now? No. It was a 12b-6. There was no evidence taken. I see. No evidence properly considered. But you could still maybe – so would you argue that we should get to the merits now, or would you argue that you ought to be able to get to – get past the motion to dismiss and – as long as it's not preempted, and with regard to whether there was a contract, that could be dealt with on the summary judgment? I just believe it's Appellant's position that we should be here on preemption and that there should be a developed factual record before the merits of the claims are evaluated as to whether or not they should subsist or be dismissed. So you are 12b-6 on preemption, and as far as determining whether you state a claim that would not be preempted, we should look at the complaint? That's correct, Your Honor. Is that right? Yeah. Okay. But wait a minute. If the judge looked at this and said, we think that there's preemption, or I think that there's preemption, but even if there wasn't preemption, I find that there's – that a claim has not been stated. He can do that, right? I think that he could have done that. And he could have done that on the information that was presented to him because of the fact that these were documents that had been submitted in support of and in opposition to the 12b-6 motion, right? I believe if the judge had chosen to evaluate the merits of the claim, then the district court could have then evaluated the merits of the claim. And he did not, A, and, B, in his decision-making process, he did two – he made two errors. Number one is he impermissibly relied upon evidence outside the record. And, two, he wouldn't – he didn't – we didn't have the ability to even argue the merits of the contract, although he seemed to go into a little bit of a merits analysis in determining the – There's a distinction to be drawn there. Judge Benitez's question focuses, I think, on that distinction. Suppose we simplify a little. Let's imagine the district judge dismissed under Rule 12b-6 solely because he thought the claim was preempted. And suppose we decided that the claim isn't preempted. Nevertheless, when we read the complaint, the plaintiff failed to state a claim upon which relief could be granted. In that case, even though in the hypothetical case we rejected the judge's reason for dismissing preemption, we would still affirm the dismissal because of the failure to state a claim upon which relief could be granted. And I think what we need now is for you to address that latter point. I think it's within your discretion to consider the merits of the causes of action or not. I don't think it's required. I'm just trying to ask you to tell us why you stated a claim. Oh, I'm sorry. Well, Your Honor, we have – our breach of contract claim is a breach of express contract, and we also have a breach of implied contract, and we have a breach of the covenant of good faith and fair dealing. Beginning with the express contract, there's the terms of transportation, section 2.9, specifically set forth U.S. Airways' commitment to provide on-time baggage delivery. Is that a contract? Is that a promise, or is that an aspirational statement on the part of U.S. Airways? Is there some bargain for exchange that's stated that says, if we do not meet these commitments, such as, for example, improving handling of long on-board delays or clearly disclosing policies for customers of special needs, is there anything in the commitment that states, if we do not do this, this is what you get in return, or this is the consideration that's paid for this contract? Going to the, I think, the first part of your question, it's Appellant's position that once a commitment is made, then that commitment must be honored. When it's not honored – But the question is, is it – is this commitment in 2.9 a promise to do it? Is it a commitment to do it, as opposed – in every instance, with regard to every passenger, as opposed to a statement that we have – we are, as a company, working hard to accomplish this? Well, if you look at the – even aside from the rest of the document, this particular provision says that he's voluntarily established a program setting standards for service levels. And then it says that we have committed, meaning the pass – it doesn't say we promise you that we're going to do this for you. We've committed to provide online baggage delivery. Now, I mean, particularly anybody who flies the airlines at all regularly, or even not so regularly, would read this as meaning we're going to try our best. Well, I think that the fact is that the – a couple of – two points. One is the terms of transportation is the contract that governs the relationship between – I'm sorry. I can't hear you. Sorry. The terms of transportation is the contractual relationship that governs the relation – that governs the relationship between the airline and the passengers. If you look at the placement – Right. But many of the other provisions are written that way. I mean, they are written that you have to do this and we have to do that and so on. But this particular provision is not written in terms of mandatory anything for anybody. It's quite a statement of history. We've made a commitment. We've decided, you know, this is what we're trying to do. Well, I think a contract is a series of commitments that each contracting party makes to each other. Counsel, let's – Counsel, let me ask you this a little bit differently. Frankly, I read Section 2.9 more the way you read it than the way possibly my colleagues do, I don't know. We don't confer before argument. I read 2.9 in isolation. It says, U.S. Airways has committed to provide on-time baggage delivery. Okay. I understand that. They promise to provide on-time baggage delivery. That's pretty specific. It's not like promising to do our best or to do a really good job. It's specific. But then I look at the – at page 68 of the excerpts, the introduction, and it's, well, frankly, just what I expected from a contract of adhesion. It says, we don't promise nothing is what we don't promise. It says here, travel on U.S. Airways shall be deemed acceptance by the customer of U.S. Airways terms of transportation. Okay, so it says to the customer, you're bound by this. But then it goes on in the boldface right below that on page 68. U.S. Airways shall in no event be liable for any indirect, special, or consequential damages resulting from performance of, delay in performance of, or failure to perform transportation of customers and other services, incidental thereto, except baggage liability, section 11. And what section 11 does, I think that's the limitation on liability. If they lose your baggage, they don't pay for it all. And I have trouble seeing how you get past that. If this is the contract, how you can flee past these limitations on liability in the contract. Well, I think that if the limitation is read as not binding U.S. Airways to any commitment whatsoever, and not being liable for any sort of damages for violation of any commitment except in section 11, I don't think that that would be an enforceable provision. I don't think that under the Airline Deregulation Act, that an airline is only liable for what it contracts its remedies to be. In the event it does provide a limitation on a particular action, then you would use Federal law to see if that limitation on liability is permissible. In this case, that limitation there doesn't limit the claims that Huffman is making when it comes to she wants, she's seeking a return of the fee that she paid as part of a separate transaction to have her bag timely delivered. Okay. I get that. Tell me, incidentally, I don't know exactly how it is that I happen to be looking at these terms of transportation. Were they attached to the complaint as an exhibit? Yes, Your Honor. Okay. So it's legitimate for the district court and for us to make a decision based on what they say? Yes, Your Honor. Now, would section 11.6, starting at excerpt 89, have any bearing here? That's the one you were referring to before. It's the limitation on liability. What is its relevance to the question of the meaning of 2.9? It doesn't prohibit any refund of the fee. It sets a cap on the amount of $3,500. It sets certain particularized circumstances like perishable fruits and vegetables. Once there's total liability for a delay, a package in the U.S. Airways custody is limited to so-and-so. But you're asking for more than $3,300 per customer, so it's not really a problem. Is that right? That's correct. I guess she's not pleading consequential damages from the delay of her baggage, is she? No, Your Honor. Like I had a job interview the next day and I had to buy a new dress or something like that? No, Your Honor. That's correct. She's just asking for a return of the money that she spent. Just asking for a return of her payment, yes. And that means interpreting the payment as for prompt delivery and not merely delivery when we get around to it. Yes. Appellant believes that on-time delivery has its ordinary meaning. We can dispute precisely what that means, but it certainly doesn't mean – I don't think anyone would agree it means two hours later or the next day or in the event the bag is lost, never arriving. Very briefly, looking at Section 9.1, Section 9.1 provides that U.S. Airways undertakes to use its best efforts to transport the customer and baggage with reasonable dispatch. Does that impact your thinking about the contractual obligation that U.S. Airways agreed to? In other words, they said, we'll use our best efforts to deliver the baggage if we can on time and to comply with all of the other provisions of 2.9, right? Doesn't that seem to be inconsistent with the idea that they would provide a refund if they didn't deliver the bags on time? Well, Your Honor, I believe that each contracting party has the obligation to use best efforts to perform their obligations under the contract. And so to the extent that this is stating what is already imposed, I don't believe that that modifies the obligation. I think in any contractual circumstance, if a party uses best efforts and still doesn't fulfill their obligation, it's a breach of contract. Okay. Thank you. Thank you very much. We will give you about a minute of rebuttal. Thank you. Good morning. Michael McGinnis of Phil Melvaney & Myers on behalf of Defendant U.S. Airways. Your Honor, the issue here is twofold. And you've come to the issue at the beginning of this hearing. One is the question is whether U.S. Airways voluntarily undertook or voluntarily obligated itself contractually to transport appellant's luggage from Colorado to California at the same time and deliver that luggage at the same time she arrived. Why can't I read this this way to determine what the commitment is? I look at 2.9, and it's plain that they mean this as a contract, because in the introduction, 1.0, they say, travel on U.S. Airways shall be deemed acceptance by the customer of U.S. Airways terms of transportation. So they're treating their own terms as an offer that the customer accepts when he gets on the plane. And then I look at 2.9, and it says U.S. Airways has committed to provide non-time baggage delivery. Then I look at the limitations on liability, and it says no liability for indirect, special, or consequential damages except baggage liability, Section 11. And so then I go to Section 11, and it says total liability for provable, direct, or consequential damages shall be limited to $3,300. I take that to imply that the airline accepts liability for provable, direct, or consequential damages up to $3,300. And then I look at the next page, page 90. It says, no action shall be maintained for lost damage or delay of checked baggage unless notice is given in writing within 45 days. That would seem to carry a negative pregnant that an action may be maintained for lost damage or delay under this contract, provided that notice is given within 45 days. It's not clear to me why this isn't a voluntary undertaking by U.S. Airways to be liable for damages if they delay delivery of the luggage, provided that they get notice and provided that it's subject to a $3,300 cap. Your Honor, the contract is specific with respect to on-time delivery and whether or not U.S. Airways has an obligation to Show me the language you're relying on. Sure, Your Honor. It's Section 11. It's the excerpt of record, page 90, where it talks about baggage delivery and where U.S. Airways specifically recognizes that bags will sometimes get to an airport after the passenger arrives and then the provision goes on to say what U.S. Airways will do when that happens. Well, it doesn't say that they won't give you your money back. You're saying that there's a negative pregnant, that because they say if we don't deliver your baggage on arrival, we'll do our best to give it to you within 24 hours, except we won't deliver it to a residence after midnight unless you ask for it, but we will deliver it the next day. What I'm saying, Your Honor, You're saying the negative pregnant is nothing more. I'm saying this is the contract. Everyone agrees this is the contract. And this is the place in the contract where the company addresses what will happen if your baggage arrives at the destination after the passenger. There's no other place in the contract. It doesn't say you don't get your $15 back that you paid for prompt delivery. No. So there's two issues here, Your Honor. The first is, has U.S. Airways committed contractually to simultaneously produce the bag at the passenger's destination with the passenger? Nowhere in the contract, even in the Section 2.9 that you've identified, Your Honor, the on-time baggage delivery does not say that on-time baggage delivery means that baggage will get to the destination at the same time as the passenger. I don't know about that. It's perfectly plain from the section on delivery that you just directed our attention to that what they mean by timely delivery is that the baggage gets there when the passenger does. When I look at 2.9, they call it a commitment. And in the context of what they clearly mean in Section 1 to be a binding contract on the customer, commitment looks like it means promise. Your Honor, you have to read the contract as a whole. I am. And looking at the section that I just identified, the contract makes clear that there are situations where the baggage will arrive after the passenger and then indicates what will happen when the baggage arrives after the passenger. And the company says that it will make its best efforts in those circumstances to provide the baggage within 24 hours. Then there's another section. What I wonder is since you're relying on a negative pregnant, you're not relying on express language, and at least in California there's no parole evidence rule, I wonder whether summary judgment or trial is needed to find out customs of the trade and the other things that could bear on how to interpret the contract to decide whether there's a negative pregnant. Your Honor, again, if I could point to another section of the terms of transportation, I believe it's Section 8 refers to refunds. So it's not – I'm not relying exclusively on Section 9, but Section 8 of the terms of transportation, which is excerpt of Records 79 through 81, addresses the circumstances under which refunds will be available. It's all about your ticket, not your baggage charge. Well, it addresses – it does address – it addresses nonrefundable tickets. It addresses situations where the – Stop a little bit for a couple of ways. First of all, I take it from the way you've chosen to argue this morning, and I would suggest it's the better part of valor, that you're no longer arguing the preemption case. I mean, essentially, we seem to be at the merits, and for my part that's where we ought to be. But the briefs were – seemed to be arguing that we never get to the merits. And Wolin seems to say that if it's, in fact, a contract or a voluntary commitment, that the ADA doesn't preempt. And you seem to be arguing in your briefs that it doesn't – that doesn't apply here, but you're essentially arguing the merits as arguing that. So what's the point of the – does any of the rest of the preemption argument matter? Do we just get to the merits here? Thank you, Your Honor. Now, in our briefs below, we made both arguments, and the judge chose to – the judge found that the claims were preempted, so he didn't get to the merits, to the merits argument. But the way he decided that Wolin's didn't apply was by deciding the merits, as far as I could tell. But that's because the Wolin's argument blends with the merits. Well, it doesn't really. I mean, conceptually, you look and you say, are they talking about a voluntary – are they saying there's a voluntary commitment? Yes. Okay, there's no preemption. Then you get to the merits. Now, he didn't quite do it that way. He said, I don't see that there was actually a promise here. He wasn't looking at the allegations he was looking at. He was determining the merits. But all I'm asking you now is do you now agree that what we really should be doing here is just getting to the 12b-6 on the merits of whether there were, in fact, claims established, period? Your Honor, we definitely believe that the 12b-6 argument, the merits argument, is a successful one for us and that the Court can find on those alternative grounds. However, I want to be clear that our view is that under the Ninth Circuit's decision in Sanchez, which is a refund case similar to this case, that the claim would be preempted. The panel in that case, in a similar situation involving a refund, found that the claim was preempted under Wolin's, engaged in a significant discussion of the Morales case, the Wolin's case, talked about ADA preemption, then went on to conclude, went on to actually examine the contract and to say, look, or to hold that because the plaintiff had not alleged a voluntary undertaking, because her, that the contractual language that she was pointing to was not consistent with the contract that she was alleging, that there was no voluntary undertaking and that the claim was preempted by the ADA. So this circuit, the Ninth Circuit and other circuits, the Buck case, which we cite to you from the First Circuit, they will look at the merits of the case under Wolin's to see whether or not there are enough allegations to allege a breach of contract. So the point is, Your Honor, you can't just go in there and say, Sanchez is your best case and it's a good case for you. I agree. As you can tell, because it was 2 to 1, it was a case where it wasn't, the answer wasn't perfectly obvious to all of us, and it wound up being resolved on the ground that, well, as the majority opinion put it, the real question here is whether Aeromexico made a contractual commitment to advise passengers about the Mexico tourism tax, not to collect it from exempt passengers and to refund that portion. And we said if it did, Sanchez's claim could proceed. So I take it you don't disagree that if the airline here had made a commitment, if we don't get your baggage to you when you get off the plane, you'll get your $15 back, that would not be preempted. Correct. If the plaintiffs in this case could actually plead a voluntary undertaking, that the carrier stipulated to without any reference to state law or... Putting it more concisely, if your deal was what the plaintiff says was your deal, no preemption. Is that right? If the plaintiff could establish that U.S. Airways contractually committed itself to deliver baggage at the same time as the passenger or refund the money, then the Woollens exception would apply and there would not be a preemption defense. But clearly we do not think that that is what should control here because the plaintiffs have not, in our view... There what we had to do is see if there was some implied agreement to give the passenger back money that the airline took for tax when there was no tax due. And here it's whether there's a commitment expressed or implied to give the $15 back if they don't deliver the bags on time. Right. So it was similar facts in Sanchez where the tourism tax did not apply to the plaintiffs. The government of Mexico assessed the tourism tax. The air carrier included that tax in the fare and the plaintiff did not meet the requirements of the tax because she was a citizen of Mexico. And the court held that the carrier did not have any obligation to advise the plaintiff that she was exempt from the tax and did not have any contractual obligation to return that tax after it was collected, even though it did not apply to the plaintiff. Now, what do you say to the distinction that the plaintiff draws between this case and Sanchez? A lot of it is in the reply brief, so I know you haven't been heard from before on it. Right. My understanding is, Your Honor, the way the plaintiffs are distinguishing the Sanchez case is that Sanchez does not stand for the proposition that all breach of covenant or breach of contract claims are not preempted by the ADA. With which you agree. Excuse me, Your Honor? With which you agree. Yeah. We agree that if... But Sanchez, the difference with Sanchez, I mean, it's a fine line, but essentially what they said in Sanchez was, look, there was no, I mean, not only wasn't there, didn't the contract mean this? I mean, here we have something that is a contract. We have these terms of transportation. They are a contract about something, right? Yes, Your Honor. And they're saying there just was nothing. The thing that you're looking at and saying that it makes a commitment doesn't say anything about what you're saying. You're getting it from somewhere outside the contract. You're getting it from outside the commitment or any statement or any voluntary anything. I mean, here we do have the airline voluntarily saying something about a commitment with regard to on-time travel, and the question is, what does it mean? But it's not that there is no piece of paper which even arguably says it, and it certainly arguably says it, and therefore on at least the merits of the contract question. Right, Your Honor. The plaintiff can't plead around Wolins and Sanchez. They're not pleading around. I mean, in Sanchez they were pleading around. Here it seems to me they're not pleading around in a preemption case. You're just disagreeing about how you interpret this document, whether it has a commitment to do X or it doesn't have a commitment to do X. But, Your Honor, as a matter of law, the court must apply the terms of an unambiguous contract. And in this case, U.S. Airways has unambiguously stated that. But that's the merit. I don't know. It bothers me that we're shifting around here. And it might matter because this was decided on a 12b-6 on preemption grounds. And if we're going to get to the merits of the contract issue, it's not clear to me that we do that. That's the question.  So, Your Honor, you interpret a contract as a matter of law. There's nothing else. I mean, the contract is here. It's in front of you. The interpretive problem here is that ordinarily a contract of adhesion is construed contra pro forentum. So we would not, where the contract does not state something, construe the silence as a negative pregnant in favor of the party that drafted it, as we would with a arm's-length bargain between two parties contracting with equal ability to vary the terms. But, Your Honor, in this contract, there's no commitment on the part of U.S. Airways to simultaneously deliver. Well, here's what there is. There's a promise to deliver the baggage on time. There's a limit of liability that says if we break our promises regarding baggage, our liability limit is $3,300. For consequential, provable consequential damages, not a refund. It's a limit on liability. There's nothing that says one way or the other whether you'll get a refund. There is something that says if we don't deliver your baggage to you when you get off the plane, we'll deliver it to you within 24 hours. There is nothing that expressly says we won't give you your money back that you paid for timely delivery, which was our deal. But there's nothing that says we will or we won't. So what you need is an inference from silence that's a negative pregnant. That would be a pretty obvious inference for a contract negotiated at arm's length. Ordinarily, when a contract is a contract of adhesion, the ambiguities and silences are interpreted in favor of the other party. Your Honor, in this case, the parties addressed the issue of refunds. We discussed at page 26 and 27 of our brief cases which say that courts cannot add terms to a contract. Well, wait. You're over time, but I do have just a technical question, which is the terms of transportation manual, does the passenger get that?  It's available to the passenger, Your Honor. Available. That the airline must make it available. Available online, available. Right, online. I see. Okay. Thank you very much. Thank you for your time. Thank you for a useful argument. You can have one minute in rebuttal. I just want to address one aspect of Sanchez if it pleases the Court. Sanchez brings up another issue. The issue is how the Ninth Circuit has defined what is and what is not a preempted activity. And in Sanchez, the contracted issue went directly to the price of the ticket itself. And the facts in Sanchez were the plaintiff paid a certain price for the ticket, later on alleged that things weren't. Counsel, let me interrupt you just a second. But in order for it to be preempted, it doesn't have to directly affect the price of the ticket. Isn't that the case? As long as it's not such a tenuous connection between one and the other? Well, it needs to have a significant impact. But I don't understand. We have to get to the price question. Why isn't this a service? Briefs have this crazy kind of discussion about the difference between cargo and luggage, and I don't understand why that matters. I mean, the ADA doesn't talk about cargo versus luggage, does it? Well, I was bringing up a distinguishing point about how Sanchez is distinguishable from this case. Because Sanchez dealt with an item that was specifically identified as something that would be preempted. All right. And the question is why this doesn't deal with an item that's specifically about service. Because Chara specifically defined what was a service. Oh, yes. But, I mean, an opinion is not a statute. It happened to use the word cargo and not luggage because that's what it was talking about. But it seems to me that the question of whether – I mean, if somebody said – if an airline had a new airline that says, on our airline, we're not going to have any checked baggage, that wouldn't be a question of service, that you can't check baggage, you have to carry it online, or vice versa? Well, Chara said that the mishandling of luggage in that case was in a personal injury. Someone got banged by luggage. Well, that's what they meant by mishandling. That didn't mean whether you were going to carry it or not. But is it any different to mishandle the luggage if you lose the luggage, or if you don't get the luggage there for several days? I mean, it seems like we get into a gee distinction if we say that when it comes to tort, when the mishandling of luggage causes a tort injury, it's not going to be considered preemptive. But if it winds up with an economic injury, then it is going to be preempted. But isn't that exactly what the law is? I mean, if it's a tort, if it's, say, a personal injury case, then that doesn't affect price. And it doesn't affect service. Well, I do – I don't think there's a difference between tort and contract. For example, when Chara's – Chara's was unanimous, en banc, sui sponte decision by 11 judges of this Court. They specifically took Chara's under consideration to provide some clarity into this doctrine. They relied upon the Woolens case, which was a contract case, to explain its application in the context of the cases before it. Since that time, we've had Ginsburg come out and apply it at a firm – not a firm Chara's, but – but rely upon the Chara's – the Chara's decisions and analysis when it applied to the contract case before it. So I don't think any court in the Ninth Circuit has made a distinction that there should be a different standard set for when it's torts versus when it's contracts. Instead, the instruction is to define – in the Ninth Circuit, service is defined more narrowly than in other circuits, because the danger of defining it too broadly would then relate to everything an airline does. I mean, arguably, airline miles programs are services. You know, it could be everything an airline does. Instead, Chara's came down and defined – Kagan. Airline miles programs are prices if they're not services, but there's still a Woolens exception. Well, in – That's what Woolens held, essentially. Yes, but to the extent that – to the extent that there's a – to the extent that the subject matter of the – of the action relates to the point-to-point transportation of passengers, cargo, or mail, you're going to wind up in a preemption issue that you then have to get out of. If instead it relates to the mishandling of baggage, the assistance to passengers, the providing of in-flight beverages, those things, you're not going to wind up with a preemption concern. Okay. Thank you very much. Thank you all for your argument. An interesting case. Haycock v. Huffman is submitted, and we will –
judges: Benitez, Kleinfeld, Berzon